IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE AT KNOXVILLE

| | |
|---|---|
| PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILTY, <br><br> and <br><br> TENNESSEE CLEAN WATER NETWORK, <br><br> Plaintiffs, <br><br> v. <br><br> JOHN SCHROER in his official capacity as COMMISSIONER OF THE TENNESSEE DEPARTMENT OF TRANSPORTATION, <br><br> Defendant. | Case No. 3:14-cv-589 <br><br> COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF PURSUANT TO 33 U.S.C. § 1251, ET SEQ. |

## COMPLAINT

1. Public Employees for Environmental Responsibility ("PEER"), a Washington, D.C., non-profit corporation, and the Tennessee Clean Water Network ("TCWN"), a Knoxville, Tennessee, non-profit corporation, ("Plaintiffs"), file this action for declaratory and injunctive relief pursuant to 33 U.S.C. § 1365(a)(1) against Tennessee Department of Transportation ("TDOT") Commissioner John Schroer, in his official capacity, ("Defendant"), for Defendant's failure to ensure compliance with the terms and conditions of permits issued pursuant to 33 U.S.C. §§ 1341 and 1344 of the Clean Water Act, 33 U.S.C. § 1251, et seq. ("CWA").

2. Specifically, Plaintiffs contend that Defendant failed to ensure compliance with the terms and conditions of the § 401 Water Quality Certification No. 92-142 issued to TDOT by the Tennessee Department of Environment and Conservation ("TDEC") pursuant to 33 U.S.C. § 1341 ("Certification") and the § 404 Permit No. 52,789 issued by the United States Army Corps of Engineers ("Corps") pursuant to 33 U.S.C. § 1344 ("Permit").

3.     TDOT obtained the Certification and Permit, which authorized the fill of approximately 0.92 acres of wetland, in conjunction with a road widening project for State Route 1 (also called 11W / Lee Highway) and State Route 32 (also called 25 E / Dixie Highway).  To mitigate for the wetland loss, the Certification and Permit require TDOT to create approximately 3.268 acres of new wetlands on adjacent TDOT land.  The Certification further requires that three acres of the adjacent land on TDOT's property receive a deed restriction to protect the property in its natural state in perpetuity.  As of the filing of this Complaint, Defendant has not ensured compliance with these requirements.

4.     TDEC issued the Certification on August 9, 1994, to expire in August 1997.  The Corps issued the Permit on September 6, 1994 with a completion date of September 6, 1997.  As explained in more detail below, both TDEC and the Corps subsequently extended the completion deadlines for the project work.

5.     In 2011, TDOT conducted a site assessment and found approximately 1.01 acres of created wetland, which is well below the 3.268 acres required by the Permit and Certification.  Even that acreage, however, should not count as completed mitigation.  Water quality testing by TDOT in 1998 revealed acidic conditions falling below the state minimum for fish and aquatic life, and acidity continues to plague the site today.  Water testing done by PEER in 2006 and 2013 showed that the created wetland remains overly acidic, in violation of requirements in the Permit and Certification that the work be carried out in a manner that prevents violations of applicable water quality standards.  Thus, TDOT effectively created <u>no</u> wetland acreage that meets water quality standards, and the Commissioner has done nothing to correct this failure.  Furthermore, although a belatedly-filed deed restriction is now in place, the deed fails to restrict the property in perpetuity as the Certification requires.

2 of 12

Case 3:14-cv-00589-HBG   Document 1   Filed 12/18/14   Page 2 of 12   PageID #: 2

6.      Because Defendant has not ensured compliance with the terms and conditions of the Permit and Certification, Plaintiffs seek declaratory and injunctive relief to correct these ongoing violations, as well as an award of costs and attorneys' fees pursuant to 33 U.S.C. § 1365.

## I.      THE PARTIES

7.      Plaintiff Public Employees for Environmental Responsibility is a national non-profit alliance of local, state, and federal scientists, law enforcement officers, land managers, and other professionals and members of the general public dedicated to upholding environmental laws and values.  PEER is a Washington, D.C., non-profit corporation.  PEER maintains an office in Tennessee, is registered in Tennessee as a 501(c)(3) nonprofit corporation, and is authorized to do business in Tennessee.  PEER's organizational purposes include assuring the enforcement of federal and state laws aimed at protecting wetlands.  In Tennessee, PEER has been and will continue to work to uphold the Clean Water Act's protections for the nations' streams and wetlands.  PEER files this action on its own behalf and on behalf of its members.

8.      Plaintiff Tennessee Clean Water Network is a Tennessee 501(c)(3) nonprofit corporation dedicated to empowering Tennesseans to exercise their right to clean water and healthy communities by fostering civic engagement, building partnerships, and advancing – and when necessary, enforcing – water policy for a sustainable future.   One of TCWN's core goals is to address community concerns about water quality and how it impacts health, quality of life, and our natural resources.  TCWN is a membership organization, and has members whose property, recreational, and/or aesthetic interests are injured by the CWA violations alleged herein.

9.      PEER, TCWN, and their respective members have preservation and conservation interests in ensuring the health of Tennessee's streams and wetlands.  Plaintiffs and their members are actively engaged in protecting Tennessee's wetlands, streams, and rivers through

conservation and preservation efforts. Cherokee Lake, the receiving water body for the areas impacted in this case, is a popular recreation destination, particularly for striped bass fishing. Defendant's actions are harming Plaintiffs' members' interests in Cherokee Lake and its surrounding tributaries and downstream waters.

10. Wetlands provide numerous values and functions, including protecting and improving water quality, flood control, maintaining surface water flow during dry periods, increasing aesthetic values, and providing fish and wildlife habitat. Functional streams and wetlands increase the survivability of surrounding riparian vegetation (*i.e*, trees and shrubs), which in turn stabilize stream banks and stop erosion. Defendant's failure to ensure the creation of a functioning wetland of 3.268 acres that complies with water quality standards and his failure to register a deed restriction protecting the property in perpetuity injures Plaintiffs and their members' interest in protecting the health of Tennessee's waters.

11. Plaintiffs and their members who use, enjoy, and work to conserve the waters of Tennessee are being, and – unless the relief requested herein is granted – will continue to be adversely affected and injured by Defendant's unlawful failure to ensure compliance with the Clean Water Act and the Certification and Permit issued thereunder.

12. Defendant John Schroer is the Commissioner of TDOT, a state agency in the executive branch of the state government. TDOT is the agency that applied for and received the Certification and Permit. Commissioner Schroer is legally responsible for overseeing TDOT activities, including whether transportation work completed in Tennessee complies with the CWA. The Commissioner is charged with supervising, directing, and accounting for the administration and operation of TDOT and its employees pursuant to Tenn. Code Ann. § 4-3-2303. Plaintiffs are suing the Commissioner in his official capacity.

## II. JURISDICTION AND VENUE

13. This Court has jurisdiction of this matter pursuant to 33 U.S.C. § 1365(a) of the Clean Water Act and 28 U.S.C. § 1331, federal question jurisdiction.

14. An actual, justiciable controversy exists between the Plaintiffs and Defendant. The requested relief is proper under 28 U.S.C. § 2201, 28 U.S.C. § 2202, and 33 U.S.C. § 1365.

15. Venue is properly vested in this Court under 33 U.S.C. § 1365(c)(1) because this is the judicial district in which the violation is taking place.

16. Plaintiffs, pursuant to 33 U.S.C. § 1365(b), gave notice to Defendant, to the Administrator and the Region 4 Administrator of the Environmental Protection Agency, and to the Commissioner of the Tennessee Department of Environment and Conservation of the violations alleged in this Complaint by letter dated January 13, 2014, and sent by U.S. certified mail, return receipt requested. The Notice Letter is attached hereto as Exhibit A, and incorporated by reference as if fully set forth herein. More than sixty days has elapsed since notice was properly served on the Defendant. The violations complained of in the notice letter are continuing and have not been substantively remedied as of the date of the filing of this Complaint.

## III. LEGAL BACKGROUND

17. The objective of the Clean Water Act is to restore and maintain the chemical, physical, and biological integrity of the Nation's waters. 33 U.S.C. § 1251(a). To ensure that development and construction projects do not cause wetland loss, the CWA prohibits the discharge of dredged or fill material into waters of the United States unless authorized pursuant to § 404 of the Act. Under CWA § 401, in order to obtain a § 404 permit from the Army Corps

of Engineers, the applicant must present the Corps with a certification from the State. The § 401 certification process ensures compliance with the CWA and Tennessee water quality standards.

18. Public notice and participation must precede the issuance of a § 401 Certification. Tenn. Comp. R. & Regs. 0400-40-07-04(4)(a),(b); Tenn. Code Ann. § 69-3-101 *et. seq*. A permit may only be modified without public notice if the "Commissioner determines that a proposed permit modification will not materially change water quality aspects of the project, or will result in an improvement of water quality, as compared to the originally permitted activity." Tenn. Comp. R. & Regs. 0400-40-07-.04(4)(a)(3). "If modification results in a less restrictive permit, then public notice and an opportunity for hearing must be given prior to modification." Tenn. Comp. R. & Regs. 0400-40-07-.04(6)(b).

19. Under 40 C.F.R. § 230.97(c), if the mitigation plan cannot be completed as planned or is not progressing as anticipated, the Corps district engineer may modify the requirements, but only if the district engineer determines that the public interest requires the modification and the modified terms are comparable to those initially agreed upon. 33 C.F.R § 325.7(b); 40 C.F.R. § 230.97(c)(2)-(3) and (d). "Performance standards may be revised in accordance with adaptive management to account for measures taken to address deficiencies in the compensatory mitigation project. Performance standards may also be revised to reflect changes in management strategies and objectives if the new standards provide for ecological benefits that are comparable or superior to the approved compensatory mitigation project. No other revisions to performance standards will be allowed except in the case of natural disasters." 40 C.F.R. § 230.97(c)(4).

## IV.    GENERAL ALLEGATIONS

20. In the early 1990s, TDOT proposed a road widening project for State Route 1 (also called 11W / Lee Highway) and State Route 32 (also called 25 E / Dixie Highway) in Grainger County.

The project required wetland alteration; the placement of fill into the German Creek Embayment area of Cherokee Lake; channel relocations on Meadow Branch, Briar Fork Branch; and the creation of structures on Miller Hollow Creek, Briar Fork Creek, and an unnamed creek (all tributaries flowing into Cherokee Lake). Approximately 0.92 acre of wetland would be destroyed and several hundred feet of creek channel severely damaged.

21. On August 9, 1994, TDEC issued to TDOT the § 401 Certification, NRS No. 92-142. Special Condition 11 required TDOT to "recreate at least 3 acres of wetland on the Permittee's property as described on the plans submitted to the [TDEC Division of Water Pollution Control]." Special Condition 10 prohibited "impacts to any waters of the State other than those specifically addressed in the plans and this permit." The Certification also required TDOT to carry out the work "in such a manner as will prevent violations of water quality criteria as stated in Rule 1200-4-3-.03 of the Rules of the Tennessee Department of Environment and Conservation." Special Condition 11 additionally required TDOT to protect the three acres of adjacent land in perpetuity through a Declaration of Restriction, to be attached to the deed and registered within 6 months of the permit date.

22. On September 6, 1994, the Corps issued to TDOT § 404 Permit No. 52,789. Special Condition 4 required TDOT to comply with all terms in the Certification issued by TDEC. Special Condition 10 required TDOT to "strictly comply with the attached mitigation plan for the channel changes, lake fill, and wetland creation plan." The mitigation plan, as revised on September 25, 1996, required TDOT to create 3.268 acres of new wetlands on land adjacent to Briar Fork Creek to compensate for the fill.

*Acreage deficit*

23.     In a letter to TDEC on July 15, 1997, TDOT stated that it had created only 1.01 wetland acres rather than the required 3.268 wetland acres due to the discovery of pyritic material (which can cause acidic water conditions) under the site.  TDOT stated that it believed that this 1:1 ratio was sufficient to meet the mitigation requirement, and sought concurrence from TDEC and the Corps.  By the same letter, TDOT also sought one year extensions of the completion deadlines contained in the Certification and Permit.

24.     In response, on August 28, 1997, TDEC extended the Certification's completion deadline by one year and required TDOT to make additional improvements to the mitigation site.  This letter did not address TDOT's failure to recreate 3.268 acres of wetland as required by the Certification and Permit, nor excuse TDOT from doing so.

25.     By letter dated August 29, 1997, the Corps extended the Permit's completion deadline by two years.  In the same letter, the Corps also stated that the 1:1 ratio was sufficient.  This statement was invalid, as there was no accompanying new § 401 certification.

26.     Neither TDEC nor the Corps went through a public notice and comment process in taking these actions, and neither action constitutes a valid or legally sufficient permit modification. Despite the Corps' stated concurrence, neither the Corps nor TDEC had the authority to unilaterally relieve TDOT of two thirds of its mitigation requirement.  Relieving TDOT of the requirement to create 3.268 acres of wetland and allowing acidic conditions to remain at the site resulted in a material change to the water quality aspects of the permit and less protection for state waters.  The Permit and Certification could not be changed in this way without notice and comment.

27. To date, TDOT has purported to have created approximately 1 to 1.8 acres of wetland on the mitigation site described in the Certification and Permit. Plaintiffs contend that TDOT effectively created zero functioning wetland acres, because the acidic wetland (as described more fully below) violated the state water quality criteria, and thus cannot be considered as a functioning wetland in satisfaction of the mitigation requirements of the Permit and Certification.

28. Whether the created wetland acres total 1.01, 1.8, or 0, however, it is clear that Defendant failed to ensure that TDOT created the 3.268 acres of wetland as required, constituting a continuing violation of the terms and conditions set out in the Certification and Permit.

*Failure to Meet Water Quality Standards*

29. In addition to the acreage deficit, Defendant also failed to ensure that TDOT complied with terms in the Certification requiring it to perform the work in a manner that prevents violations of applicable water quality standards. Tennessee regulations set out water quality standards, including specific criteria that water must meet depending on its intended use. The Tennessee Water Quality Criteria for the use of Fish and Aquatic Life (applicable to all named and unnamed surface water in Tennessee, including the water bodies at issue in this case) state that the pH value shall not fluctuate more than 1.0 unit over a period of 24 hours and shall not be outside the range of 6.5-9.0 in larger rivers, lakes, reservoirs, and wetlands, yet conditions at the created wetland site continue to be acidic, with low pH levels of below 6.5. Tenn. Comp. R. & Regs. 0400-40-03-.03(3)(b)

30. The creation of acidic conditions was the reason TDOT provided in 1997 when it asked the government agencies to excuse it from completing its mitigation requirements. Water quality testing by TDOT in 1998 revealed acidic (low pH) conditions, and testing by PEER and TCWN in 2006 revealed consistently low pH levels at the mitigation site. Subsequent testing in

November of 2013 revealed continued low pH levels at the mitigation site as well as in waters immediately downstream from the mitigation site, where the stream flows under the highway. Additionally, PEER's tests revealed acidic conditions about one mile further downstream.

31. State regulations require that the mitigation result in no overall loss of resource value. Tenn. Comp. R. & Regs. 0400-40-07(7)(a). Because of the acidic condition at the mitigation site and downstream, TDOT's mitigation site is resulting in a significant overall loss of resource value, in violation of the Certification.

*Failure to Protect Land in Perpetuity*

32. Special Condition 11 of the Certification required TDOT to protect the three acres of adjacent land and wetland in perpetuity through a Declaration of Restriction, to be attached to the deed and registered within 6 months of the permit date. The restriction that TDOT eventually attached to the property in July of 2012 – almost 18 *years* after the permit date and only after a complaint from TCWN – is insufficient, as it fails to protect the land in perpetuity. Instead, it allows the restriction to be waived, amended, modified, or terminated at any time for cause by and upon the agreement of both the Commissioner of TDEC and the Army Corps. As the restriction may be terminated at any time, it fails to protect the property in perpetuity in violation of the Certification.

## V. CAUSE OF ACTION

33. Plaintiffs hereby incorporate all of the above allegations as if they were re-alleged herein.

34. Count 1: Defendant has permitted the violation of the Permit and Certification, and hence Sections 401 and 404 of the Clean Water Act, 33 U.S.C. §§ 1341 and 1344, by failing to ensure the creation of 3.268 acres of wetland. Plaintiffs contend that because the wetland acreage

TDOT created is acidic and does not meet the water quality criteria for Fish and Aquatic Life use classification, that TDOT created zero acres of functioning wetland.

35. <u>Count 2</u>: Defendant's failed mitigation efforts are causing an overall loss in resource value and causing continued water quality violations due to the wetland's acidic nature, in violation of the Permit and Certification and Sections 401 and 404 of the Clean Water Act, 33 U.S.C. §§ 1341 and 1344.

36. <u>Count 3</u>: Defendant is in violation of the Permit and Certification and Sections 301, 401, and 404 of the Clean Water Act, 33 U.S.C. §§ 1341, and 1344 by having failed to place a legally-sufficient conservation easement, deed restriction, or other legal device to protect the adjacent three acres of wetland in perpetuity.

37. Defendant's failure to ensure compliance with the conditions of the Permit and the Certification is ongoing, and has caused and is causing or contributing to degradation of Tennessee's Cherokee Lake, including the German Creek Embayment area and the affected tributaries and downstream waters. If not enjoined, Defendant's failure will continue to injure Plaintiffs and their members.

38. Title 33 U.S.C. § 1365(a)(1) of the CWA authorizes any citizen to commence a civil action in the appropriate federal court against any person alleged to be in violation of the Act.

39. Title 33 U.S.C. § 1365(a) of the CWA authorizes the district court, without regard to the amount in controversy or the citizenship of the parties, to enforce the requirements of the Act. 33 U.S.C. §§ 1365(a); 1319(d); 40 C.F.R. § 19.4.

## VI.   REQUEST FOR RELIEF

For the foregoing reasons, Plaintiffs respectfully request that this Court:

A. Declare that Defendant is in violation of the terms and conditions of the Certification and Permit.

B. Declare that Defendant's failure to abide by the terms and conditions of the Certification and the Permit are violations of the Clean Water Act, including 33 U.S.C. §§ 1341 and 1344.

C. Grant declaratory and injunctive relief sufficient to compel Defendant to complete the creation of 3.268 acres of properly functioning wetlands, to attach a deed restriction for the adjacent land in perpetuity as required by the Permit and Certification, and to meet all the terms of the Permit and Certification.

D. Grant declaratory and injunctive relief sufficient to restore and maintain the quality of the jurisdictional waters, including meeting applicable state water quality standards and criteria.

E. Award Plaintiffs their costs, expenses, expert witness fees, and reasonable attorneys' fees as provided in 33 U.S.C. § 1365.

F. Award all other, further, and different relief that appears to the Court to be just and reasonable.

Dated this 18th day of December, 2014.

Respectfully submitted,

\_\_s/s Stephanie Durman Matheny_____
STEPHANIE DURMAN MATHENY
BPR NO. 027883
Tennessee Clean Water Network
P.O. Box 1521
Knoxville, TN 37901
Phone: (865) 522-7007x102 / Fax: (865) 525-4988
Email: stephanie@tcwn.org