UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY, and TENNESSEE CLEAN WATER NETWORK,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN SCHROER, *in his official capacity as* COMMISSIONER OF THE TENNESSEE DEPARTMENT OF TRANSPORTATION,<br><br>Defendant. | No. 3:14-cv-589-HBG |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the consent of the parties [Doc. 14], including for entry of judgment.

Now before the Court is the Plaintiff's Motion for Summary Judgment [Doc. 38] and the Defendant's Cross-Motion for Summary Judgment [Doc. 39]. Both Motions are now ripe for adjudication. Accordingly, and for the reasons more fully explained below, the Plaintiff's Motion for Summary Judgment [**Doc. 38**] is **DENIED**, and the Defendant's Cross-Motion for Summary Judgment [**Doc. 39**] is **GRANTED IN PART.**

### I. BACKGROUND

The following facts are taken from the parties' undisputed material facts [Docs. 38-1, 42], unless otherwise noted. In the early 1990s, the Tennessee Department of Transportation ("TDOT") proposed widening and improving State Routes 1 and 32 from Bean Station to Miller Hollow in Grainger County, Tennessee, including the permanent loss of .092 acre of wetlands. On August 9, 1994, the Tennessee Department of Environment and Conservation ("TDEC") granted TDOT a

Clean Water § 401 Certification (hereinafter, "§ 401 Certification") "requiring "at least three" acres of wetland creation at the mitigation site. Further, in considering whether to grant a Clean Water Act § 404 dredge and fill permit (hereinafter, "§ 404 Permit") for the project, the Army Corps of Engineers ("ACOE"), completed an environmental assessment, pursuant to the National Environmental Policy Act. Based on the environmental assessment, ACOE stated that TDOT's project would impact the environment but that the mitigation plan including a wetland creation ratio of about 3:1 would minimize the environmental impacts. On September 6, 1994, ACOE issued a Clean Water Act § 404 Permit to TDOT for the roadwork project. Special Condition 10 of the § 404 Permit explicitly required TDOT to "strictly comply" with the wetland mitigation plan.

After a visit to the wetland mitigation site on May 17, 1996, TDOT and TDEC officials concluded that the wetland creation was not meeting stipulated goals, and therefore, TDOT revised its mitigation plan by increasing wetland creation from 3.0 acres to 3.268 acres. A month later, ACOE approved this revised plan requiring the creation of 3.268 wetland acres. Subsequently, in July 1997, TDOT sought an extension of time from both ACOE and TDEC to complete the road work. In its letter, TDOT stated that it had created only 1.01 wetland acres but wanted to halt further wetland creation due to the discovery of pyritic material at the mitigation site, the excavation of which could release acidic and iron laden material into Briar Fork Creek. TDOT requested an exemption from the permitted mitigation plan that required the creation of at least 3 acres of wetland. ACOE granted TDOT a one year extension and added, "In regards to the mitigation, according to your documentation you have attained a 1:1 functional replacement. We agree that any further expenditures would not be warranted, considering that pyritic material has been encountered." [Doc. 39-20 at 2].

2

Case 3:14-cv-00589-HBG   Document 60   Filed 03/09/17   Page 2 of 11   PageID #: 579

TDEC also granted a one year extension, but the parties are in dispute as to whether TDEC decreased the permitted mitigation acreage. The TDEC letter, dated August 28, 1997, states, in relevant part:

> In regards to the wetland mitigation, the Division has decided that TDOT shall remove the inflow/outflow pipe at the downstream end of the mitigation site. In addition, TDOT shall investigate and, if feasible, convey flow from the conveyance on the western property line (flows from Briar Hollow Road to Briar Ford Creek) into the wetland mitigation site. Monitoring of the site shall continue as required.

[Doc. 38-19]. The letter is signed by Mike Lee. [Doc. 38-19]. The Plaintiff argues that the plain language of the letter shows that TDEC did not decrease the permitted mitigation acreage. The Defendant argues otherwise and submits the Affidavit of Mike Lee [Doc. 41], which states, in relevant part:

> In my capacity as TDEC's wetland expert and permit writer, I determined that the 1.01 acres was sufficient mitigation to offset the permitted environmental impacts. . . . My letter of August 28, 1997, was written to reflect TDEC's acceptance of both TDOT's request and the Corps of Engineers approval of the permit modification request. In my letter, I stated that specific mitigation requirements be performed with the intention of closure of the site and also granted approval of the one year extension request contained in the modification request.

[Doc. 41 at 2].

The Plaintiffs, non-profit organizations, filed suit [Doc. 1] on December 18, 2014. The Complaint alleges that the Defendant failed to ensure compliance with the terms and conditions of the § 401 Certification issued to TDOT by TDEC pursuant to 33 U.S.C. § 1341 and the § 404 Permit issued by ACOE pursuant to 33 U.S.C. § 1344. The Plaintiffs allege that TDOT was required to create approximately 3.268 acres of new wetlands on adjacent TDOT land. The Plaintiffs also allege that the § 401 Certification requires that three acres of the adjacent land on

3

TDOT's property receive a deed restriction to protect the property in its natural state in perpetuity. The Plaintiffs allege that the Defendant has not ensured compliance with these requirements.

Further, the Plaintiffs allege that in 2011, TDOT conducted a site assessment and found approximately 1.1 acres of created wetland, which is below the 3.268 acres required by the § 404 Permit and the § 401 Certification. In addition, the Plaintiffs allege that even the 1.01 acres should not be counted as completed mitigation because water quality testing performed in 1998 by TDOT revealed acidic conditions falling below the state minimum for fish and aquatic life. The Plaintiffs assert that TDOT effectively created no wetland acreage that meets water quality standards and that the Defendant has done nothing to correct this failure. The Plaintiffs allege that a deed restriction is now in place but that the deed fails to restrict the property in perpetuity as the § 401 Certification requires. Plaintiffs seek declaratory and injunctive relief to correct these alleged violations, as well as an award of costs and attorney's fees pursuant to 33 U.S.C. § 1365.

## II. POSITIONS OF THE PARTIES

Both parties have filed dispositive motions. The Court will begin with the Plaintiffs' Motion since it was filed first.

### (a) *Plaintiffs' Motion for Partial Summary Judgment*

The Plaintiffs seek partial summary judgment as to whether Defendant violated the Clean Water Act ("CWA") permit by failing to comply with the conditions requiring the creation of a specified amount of wetlands at a mitigation site to compensate for wetlands that TDOT filled during roadwork. The Plaintiffs assert that ACOE has no power to change conditions required by a § 401 Certification without the concurrence of the state and that such an action would undermine the entire concept of § 401 Certifications, which are crucial to sovereign states' ability to protect the health and safety of their citizens when the federal government issues dredge and fill permits.

The Plaintiffs assert that the Defendant failed to create 3.268 wetland acres at the mitigation site as required and that neither TDEC nor ACOE legally modified wetland acreage requirements. The Plaintiffs state that TDEC never modified the § 401 Certification and that ACOE had no power to alter a § 401 certification's requirements without the state's assent.

*(b) The Defendant's Cross Motion for Summary Judgment*

The Defendant asserts that the citizen's complaint provisions of the CWA do not provide the Plaintiffs the right to sue in order to enforce the conditions of a § 404 Permit issued under 33 U.S.C. § 1344. Specifically, the Defendant asserts that the purpose of the citizen's suit provision of the CWA is for enforcement of violations of the § 404 Permit and that the Administrative Procedure Act is the appropriate avenue for legal redress. Further, the Defendant argues that the Plaintiffs have failed to file their cause of action within the statute of limitations period for CWA claims and that the Plaintiffs have failed to establish standing. Finally, the Defendant asserts that it has recorded land use restrictions on the wetland mitigation site and that its wetland mitigation site is in compliance with the § 401 modified Certification and the regulations of TDEC.

**III.    STANDARD OF REVIEW**

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. Celotex Corp. v. Catrett, 477 U.S. 317, 330 n. 2 (1986); Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Burchett v. Kiefer, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." Curtis v. Universal Match Corp., 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing Celotex, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. Id.

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the finder of fact. Anderson, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. Id. at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250.

## IV. ANALYSIS

Because the Defendant raises issues with respect to subject matter jurisdiction, the Court will first address these arguments. The Defendant argues that the Plaintiffs lack standing to sue. In addition, the Defendant contends that the CWA grants citizens the right to sue for enforcement of certain violations, but this right is limited in scope and not present here. Accordingly, because the Court finds that the Plaintiffs lack standing, the Court will not address the Defendant's latter

argument. See A.C.L.U. of TN v. Rutherford County, TN, No. 3:09-cv-0396, 2006 WL 2645198, *7 (M.D. Tenn. Sept. 14, 2006) ("Standing is a jurisdictional requirement because if a plaintiff does not have standing to bring a claim, a federal court is without power to rule on the issues presented.").

The CWA was implemented to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Pursuant to the CWA, the "discharge of any pollutant by any person" is strictly prohibited, except in compliance with one of the permitting schemes set forth in the CWA. 33 U.S.C. § 1311(a). Further, pursuant to 33 U.S.C. § 1341(a), any applicant for a federal license or permit to conduct any activity that will result in discharge into navigable waters shall obtain and provide to the permitting agency a water quality certification from the State, certifying that the discharge will comply with all application provisions. The ACOE is authorized under 33 U.S.C. § 1344 to issue permits "for the discharge of dredged or fill material into the navigable waters at specified disposal sites." Moreover, any condition set forth in a § 401 certification becomes a condition of the § 404 permit. 33 U.S.C. § 1341(d).

Moreover, the CWA permits certain citizen suits. Specifically, any citizen may commence a civil action on his own behalf –

> **(1)** against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or
>
> **(2)** against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.
>
> The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be,

>           and to apply any appropriate civil penalties under section 1319(d) of
>           this title.

33 U.S.C. § 1365. The term "citizen" means "a person or persons having an interest which is or may be adversely affected." 33 U.S.C. § 1365(g).

Although the CWA allows citizen suits, in some circumstances, see 33 U.S.C. § 1365(f), the Plaintiffs must establish standing to bring suit. An association has standing to bring suit on behalf of its members when: (1) its members would otherwise have standing to sue as individuals; (2) the interests at stake are germane to the group's purpose; and (3) neither the claim made nor the relief requested requires participation of individual members in the suit. <u>Friends of the Earth, Inc., v. Laidlaw Envtl. Servs.</u>, 528 U.S. 167, 181 (2000). The Defendant does not challenge the latter two factors. Instead, the Defendant asserts that the Plaintiffs have not established that its members would have standing to sue. Thus, the principle issue before the Court is whether the Plaintiffs' members would otherwise have standing to sue in their own right.

In <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992), the Supreme Court held that to establish Article III's standing requirements, a plaintiff must demonstrate that he/she has (1) suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, as opposed to conjectural or hypothetical; (2) the injury is fairly traceable to the defendant's challenged action; and (3) it is likely, not speculative, that the injury will be redressed by a favorable decision. The plaintiff bears the burden of establishing injury, traceability, and redressability because he/she is seeking to invoke federal jurisdiction. <u>Lujan</u>, 504 U.S. at 561.

With respect to injury in fact, "The relevant showing for purposes of Article III standing . . . is not injury to the environment but injury to the plaintiff." <u>Laidlaw</u>, 528 U.S. at 181. Further, "environmental plaintiffs adequately allege injury in fact when they aver that they use the affected

area and are persons "for whom the aesthetic and recreational values of the area will be lessened" by the challenged activity." Id. at 182 (citing Sierra Club v. Morton, 405 U.S. 727, 725 (1972)).

In order to establish standing, the Plaintiffs submitted the Declaration of Richard Stratford [Doc. 50-2]. Mr. Stratford is a member of the Public Employees for Environmental Responsibility and of the Tennessee Clean Water Network. His Declaration states as follows:

> My family and I enjoy the beauty of Cherokee Lake every single day, both on and off the water. We frequently boat, fish, entertain, and marvel at the wonder of the lake.
>
> The last time I visited Cherokee Lake was this morning, October 22, 2014, to see the sunrise. I enjoy Cherokee Lake because it is so beautiful, quiet, and ever changing.
>
> We enjoy observing the plants and wildlife that depend upon the river and lake. We enjoy watching herons in March do their mating rituals along the shores of the lake, and then we wait and wait for the little herons to arrive and grow up during the summer on Island 12. We see many species of birds during the migratory months for spring and fall, and we love to be out on the lake during a hatch of minnows and we watch the larger fish jumping out the water after them. We enjoy seeing and feeding many species of birds, and especially enjoy the hummingbirds from March-October.
>
> Wetlands provide very valuable ecosystem services, which is why it is vital that permit holders fully comply with permit requirements designated to ensure no net loss of wetland value. I am concerned that the insufficiency of the wetlands mitigation at issue in this case could be affecting the health of Cherokee Lake and interfering with my aesthetic, recreational, and wildlife preservation interest in this river system.

The Court has considered both parties' positions in this case, and the Court finds that the Plaintiffs have not established standing to sue. Mr. Stratford's Declaration alleges only a generalized grievance and not an actual, individualized injury. Mr. Stratford explains how he utilizes the lake, both for recreational use and aesthetic value, but does not explain how the failure to mitigate the wetlands affects his recreational use or aesthetic value. See Lujan, 504 U.S. 560

(explaining that an injury in fact must be "actual or imminent"). Instead, Mr. Stratford asserts, in a conclusionary fashion, "I am concerned that the insufficiency of the wetlands mitigation at issue in this case *could be* affecting the health of Cherokee Lake and interfering with my aesthetic, recreational and wildlife preservation interest in this river system." (Emphasis added). The Court finds that Mr. Stratford's concern that the insufficiency of wetlands mitigation could affect health or interfere with certain activities does not establish standing. See Center for Biological Diversity v. Lueckel, 417 F.3d 532, 538 (6th Cir. 2005) (noting that "[e]xpressions of generalized concern are insufficient to establish requisite injury") (citing Laidlaw, 528 U.S. at 199 (Scalia, J., dissenting)); compare American Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Com'n, 389 F.3d 536, 541 (6th Cir. 2004) (plaintiffs established standing when the member alleged that the river was dark and oily, the pollution detracted from her enjoyment, she no longer recreated on the river, she was concerned for the harmful impacts, and was interested in obtaining correct information regarding the pollution).

The Plaintiffs assert in their brief that Mr. Stratford has sustained three concrete and particularized injuries: (1) the wetland ecosystem services he would have enjoyed had Defendant provided the 3.268 wetland acres required have never been provided; (2) Defendant's acidification of the water at the mitigation site by excavating into pyritic material threats Mr. Stratford's aesthetic and recreational interests because the unnatural pH at the mitigation site harms the ecosystem health of Cherokee Lake; and (3) Defendant's deed restriction does not protect the property in perpetuity but allows development of the mitigation site at any time without public notice, leaving Mr. Stratford unable to feel secure in knowing that the site will continually provide the ecosystem benefits it was meant to provide. [Doc. 50 at 4]. However, none of these alleged injuries are found in Mr. Stratford's Declaration. See McKay v. Federspiel, 823 F.3d 862, 867 (6th

10

Cir. 2016) (explaining that "in response to a summary judgment motion, a plaintiff cannot rely on 'mere allegations' with respect to each standing element, 'but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion, will be taken to be true.'" (Quoting Lujan, 504 U.S. at 561). As noted above, Mr. Stratford simply states that he is concerned that the mitigation issue could be affecting health and interfering with his interests. As the Defendant noted, Mr. Stratford has not explained how he has been injured or impacted by the wetland mitigation area. Accordingly, because the Court finds that the Plaintiffs have not established standing, the Court lacks subject matter jurisdiction to address the remaining arguments.

## V. CONCLUSION

Based on the foregoing, the Plaintiffs' Motion for Summary Judgment [**Doc. 38**] is **DENIED** as futile, and the Defendant's Cross-Motion for Summary Judgment [**Doc. 39**] is **GRANTED** to the extent it seeks dismissal of this action for lack of subject matter jurisdiction. A separate judgment will enter **DISMISSING** this case **WITHOUT PREJUDICE**.

ORDER ACCORDINGLY:

*Bruce Guyton*
United States Magistrate Judge